IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| RACHEL GILOTTI, *Individually and as Executrix of the Estate of Joseph T. Burke*,<br><br>Plaintiff,<br><br>v.<br><br>GUTHRIE – ROBERT PACKER HOSPITAL, *et al.*,<br><br>Defendants. | No. 4:22-CV-00263<br><br>(Chief Judge Brann) |

**MEMORANDUM OPINION**

**MARCH 28, 2023**

## I.   BACKGROUND[1]

In 2022, Joseph T. Burke[2] filed a civil complaint, which was later amended, against Defendants raising several state law claims arising from Burke's cancer diagnosis and the allegedly negligent failure of Jennifer L. Bau, M.D., an employee of Guthrie – Robert Packer Hospital, to diagnose that cancer at an earlier date.[3] Gilotti raises claims of negligence, wrongful death, and survival claims against Defendants.[4]

---

[1] For the purposes of this motion the Court takes as true the allegations contained in the amended complaint.
[2] Burke died shortly after the complaint was filed and Rachel Gilotti, as the executrix of Burke's estate, was substituted as plaintiff, and an amended complaint was filed. Docs. 11-14.
[3] Doc. 14.
[4] *Id.* at 7-18.

Gilotti alleges that, in November 2019, Dr. Bau performed a chest x-ray of Burke related to an orthopedic procedure that Burke was scheduled to undergo ("2019 x-ray").[5] Dr. Bau examined the x-ray and made no mention of any malignant findings.[6] The x-ray notes "an area of abnormality," but Dr. Bau "failed to identify this as a possible area of concern for which follow up care was recommended," which allegedly permitted the abnormality to grow unchecked.[7]

An x-ray conducted in September 2021 identified a mass in Burke's chest ("2021 x-ray"), which was confirmed by a later CT scan.[8] A biopsy conducted in October 2021 confirmed that the mass was cancerous.[9] An MRI conducted in late October 2021 further "revealed intracranial metastatic disease."[10] Gilotti alleges that the growth and spread of Burke's cancer was a direct result of Dr. Bau's failure to note that the mass revealed in the 2019 x-ray warranted follow-up care.[11]

Defendants answered the amended complaint by largely denying the allegations, and the parties commenced discovery.[12] Currently pending before the Court is a discovery dispute between the parties related to the deposition of Dr. Bau.[13]

---

[5]  Id. ¶ 11.
[6]  Id. ¶ 12.
[7]  Id. ¶ 13.
[8]  Id. ¶¶ 14-15.
[9]  Id. ¶ 16.
[10] Id. ¶ 17.
[11] Id. ¶¶ 19-23.
[12] Doc. 15.
[13] Docs. 28, 29.

During a deposition, Dr. Bau was questioned "about the [2019 x-ray] and the [2021 x-ray], and [Gilotti's counsel] displayed [an] image of both studies side by side, which was collectively marked as P-3."[14] Counsel for Dr. Bau objected to the use of Exhibit 3, noting that Dr. Bau had never reviewed the 2021 x-ray and was entirely uninvolved in taking the 2021 x-ray and that, therefore, any questions related to that x-ray would not be reasonably calculated to lead to the discovery of admissible evidence and would instead be an attempt to improperly elicit expert testimony from Dr. Bau, who is not designated as an expert witness.[15]

Gilotti argues that she should be permitted to question Dr. Bau while displaying Exhibit 3 because the evidence is relevant, and simply showing Dr. Bau the 2021 x-ray is not objectionable.[16] Gilotti asserts that she seeks to compare the location of the mass on the 2019 x-ray with "the mass location on the" 2021 x-ray "without asking [Dr. Bau] to interpret" the 2021 x-ray, and wishes to have Dr. Bau explain "how comparison studies are generally interpreted," which Gilotti asserts would test Dr. Bau's knowledge as a radiologist.[17]

Dr. Bau in turn argues that she should not be compelled to answer questions regarding the 2021 x-ray because, although she participated in Burke's care in 2019, she had no involvement in the 2021 x-ray.[18] Dr. Bau acknowledges that she may be

---

[14] Doc. 28 at 2. This exhibit will be referred to in this Memorandum Opinion as "Exhibit 3."
[15] Id.
[16] Doc. 29 at 5-8.
[17] Id. at 7.
[18] Doc. 28 at 3.

questioned regarding the 2019 x-ray since she directly participated in Burke's treatment in 2019; however, because she is not an expert witness and was not involved in any treatment in 2021, she believes that she cannot be questioned regarding the 2021 x-ray.[19]

This matter is now ripe for disposition. For the following reasons, Gilotti will be prohibited from questioning Dr. Bau regarding the 2021 x-ray and prohibited from presenting Exhibit 3 during the deposition of Dr. Bau.

## II. DISCUSSION

Federal Rule of Civil Procedure 26(b)(1) provides that "[p]arties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case." Such discovery must account for "the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit."[20]

"Generally, courts afford considerable latitude in discovery in order to ensure that litigation proceeds with 'the fullest possible knowledge of the issues and facts before trial.'"[21] The United States Court of Appeals for the Third Circuit has held

---

[19] *Id.* at 3-4.
[20] Fed. R. Civ. P. 26(b)(1).
[21] *Naranjo v. T. Walter*, No. 1:20-CV-918, 2021 WL 4226062, at *3 (M.D. Pa. Sept. 16, 2021) (quoting *Hickman v. Taylor*, 329 U.S. 495, 501 (1947)).

questioned regarding the 2019 x-ray since she directly participated in Burke's treatment in 2019; however, because she is not an expert witness and was not involved in any treatment in 2021, she believes that she cannot be questioned regarding the 2021 x-ray.[19]

This matter is now ripe for disposition. For the following reasons, Gilotti will be prohibited from questioning Dr. Bau regarding the 2021 x-ray and prohibited from presenting Exhibit 3 during the deposition of Dr. Bau.

## II. DISCUSSION

Federal Rule of Civil Procedure 26(b)(1) provides that "[p]arties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case." Such discovery must account for "the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit."[20]

"Generally, courts afford considerable latitude in discovery in order to ensure that litigation proceeds with 'the fullest possible knowledge of the issues and facts before trial.'"[21] The United States Court of Appeals for the Third Circuit has held

---

[19] *Id.* at 3-4.
[20] Fed. R. Civ. P. 26(b)(1).
[21] *Naranjo v. T. Walter*, No. 1:20-CV-918, 2021 WL 4226062, at *3 (M.D. Pa. Sept. 16, 2021) (quoting *Hickman v. Taylor*, 329 U.S. 495, 501 (1947)).

that "all relevant material is discoverable unless an applicable evidentiary privilege is asserted. The presumption that such matter is discoverable, however, is defeasible."[22] Courts may therefore limit discovery that "is outside the scope permitted by Rule 26(b)(1)."[23]

Federal Rule of Civil Procedure 30(d)(3) provides that "[a]t any time during a deposition, the deponent or a party may move to terminate or limit it on the ground that it is being conducted in bad faith or in a manner that unreasonably annoys, embarrasses, or oppresses the deponent or party."[24] If a court determines that the questions asked during a deposition exceed the legitimate bounds of discovery, it "may issue a protective order to regulate the terms, conditions, time or place of discovery."[25] This Rule exists "to guard against redundant or disproportionate discovery by giving the court authority to reduce the amount of discovery that may be directed to matters that are otherwise proper subjects of inquiry."[26] That Rule "places the burden of persuasion on the party seeking the protective order" by demonstrating "good cause" for the protective order.[27] "[A] showing of good cause

---

[22] *Pearson v. Miller*, 211 F.3d 57, 65 (3d Cir. 2000).
[23] Fed. R. Civ. P. 26(b)(2)(C).
[24] Fed. R. Civ. P. 30(d)(3)(A).
[25] *Occidental Chem. Corp. v. 21st Century Fox Am., Inc.*, No. CV1811273MCALDW, 2023 WL 2300652, at *3 (D.N.J. Feb. 28, 2023) (internal quotation marks omitted).
[26] *Id.*
[27] *Id.* (quoting *Cipollone v. Liggett Group, Inc.*, 785 F.2d 1108, 1121 (3d Cir. 1986)).

must be specific and '[b]road allegations of harm, unsubstantiated by specific examples or articulated reasoning'" are insufficient.[28]

The Court concludes that Dr. Bau has produced sufficient cause to warrant a protective order in this instance. As an initial matter, it is undisputed that Dr. Bau has not been proffered as an expert witness and, if she testifies, she will testify as a lay witness. It is well settled that "[a] treating physician is not considered an expert witness if he or she testifies about observations based on personal knowledge, including the treatment of the party."[29] It is therefore beyond peradventure—and Dr. Bau does not argue otherwise—that Dr. Bau may be required to answer questions regarding the 2019 x-ray.[30]

---

[28] *Id.* (quoting *Cipollone*, 785 F.2d at 1121).

[29] *Davoll v. Webb*, 194 F.3d 1116, 1138 (10th Cir. 1999). *See also Williams v. Mast Biosurgery USA, Inc.*, 644 F.3d 1312, 1316-18 (11th Cir. 2011) (concluding that treating physicians may offer lay opinion regarding "their experience in the course of providing care to their patients"); *United States v. Wells*, 211 F.3d 988, 997-98 (6th Cir. 2000) (holding that treating physicians may offer lay opinion regarding their "first-hand observations and treatment of" a patient); *Evans v. Cap. Blue Cross*, No. 1:19-CV-497, 2021 WL 825764, at *6 (M.D. Pa. Mar. 4, 2021) ("Treating physicians may testify as lay witnesses regarding diagnosis and treatment in certain circumstances"); *Koeppel v. Bassett*, No. 08-CV-04543 KM, 2015 WL 668177, at *7 (D.N.J. Feb. 17, 2015) ("A treating physician, although obviously possessed of expertise, may be a fact witness as to matters learned and observed in the course of treating the patient"); *Frederick v. Hanna*, No. CIV.A.05-514, 2007 WL 853480, at *6 (W.D. Pa. Mar. 16, 2007) (noting that "treating physicians not so disclosed may testify as to facts within their knowledge, as opposed to offering expert testimony. The physicians may, for example, testify regarding their treatment, examination, and diagnosis of" their patients). *Cf. Allen v. Parkland Sch. Dist.*, 230 F. App'x 189, 194-95 (3d Cir. 2007) (affirming district court order permitting treating physician to testify to facts learned during treatment, but barring any other testimony because physician was not proffered as an expert witness).

[30] As a treating physician, Dr. Bay "may state 'expert' facts to the jury in order to explain h[er] testimony." *Davoll*, 194 F.3d at 1138.

However, because Dr. Bau is not designated as an expert witness and did not participate in any way in the 2021 x-ray—or the related treatment of Burke in 2021—any questions regarding that x-ray would clearly be improper. Any answer given by Dr. Bau would require expert testimony involving "explanations of scientific and technical information not grounded in [her] own observations and technical experience"[31] gained in treating Burke by, for example, interpreting the 2021 x-ray or comparing that x-ray to the 2019 x-ray. In short, as a fact witness, Dr. Bau may only offer testimony "about [her] own treatment, not another doctor's treatment,"[32] and any questions regarding the 2021 x-ray would improperly exceed that limitation and will therefore be prohibited.

That Gilotti seeks to ask such questions is clear from her letter to the Court regarding this discovery dispute. In that letter, Gilotti states that the 2021 x-ray "is germane as to whether [Dr. Bau's alleged failure to identify an abnormality in the 2019 x-ray] allowed cancer to progress."[33] But this would necessarily call for Dr. Bau to offer expert testimony regarding what the 2021 x-ray shows. Gilotti further states that she would ask Dr. Bau "how comparison studies are generally interpreted" but, again, this would require expert testimony and, in any event, could be asked without reference to the 2021 x-ray.[34]

---

[31] *Williams*, 644 F.3d at 1317.
[32] *Kelly v. Union Pac. R.R. Co.*, No. 08-CV-088-J, 2008 WL 11335008, at *6 (D. Wyo. Nov. 10, 2008) (citing *Parker v. Cent. Kan. Med. Ctr.*, 57 F. App'x 401 (10th Cir. 2003)).
[33] Doc. 29 at 6.
[34] *Id.* at 7.

Gilotti also asserts that she should be permitted to set the x-rays side-by-side to ask questions of Dr. Bau regarding the 2019 x-ray while Gilotti's counsel "describ[es] what she sees factually on the" 2021 x-ray;[35] but this would require counsel to either improperly offer expert opinion on a matter in which she is not an expert—the interpretation of x-rays—or to ask Dr. Bau questions about what is depicted in the 2021 x-ray, which would improperly delve into expert testimony. Similarly, Gilotti asserts that she would ask Dr. Bau "to point out the location of the mass [in the 2019 x-ray] as compared to the mass location on the [2021 x-ray] without asking [Dr. Bau] to interpret the" 2021 x-ray.[36] However, Dr. Bau could not possibly compare the x-rays without interpreting the 2021 x-ray. In that vein, it would be impossible to even identify a mass in the 2021 x-ray without relying on expert knowledge since, what may appear to a lay person to be a mass could, to a trained eye, instead be an artifact in the image or some other innocuous thing.

Finally, while Gilotti asserts that there is nothing improper in simply displaying the two x-rays side-by-side during questioning, there would be no reason to display the 2021 x-ray if Gilotti did not intend to ask Dr. Bau questions about that image. There is simply no legitimate reason to display the 2021 x-ray during Dr. Bau's deposition, as Gilotti may not question Dr. Bau regarding that x-ray.

---

[35] *Id.* at 6.
[36] Doc. 29 at 7.

Accordingly, Gilotti will be prohibited from questioning Dr. Bau regarding the 2021 x-ray and from displaying Exhibit 3 while deposing Dr. Bau.

### III. CONCLUSION

For the foregoing reasons, the Court concludes that Dr. Bau has satisfied the requirements for issuance of a protective order. Consequently, her request for such an order will be granted.

An appropriate Order follows.

BY THE COURT:

*s/ Matthew W. Brann*
Matthew W. Brann
Chief United States District Judge